**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| JEANNE KING | ) | CASE NO.  4:19-CV-00720 |
| | ) | |
| Plaintiff | ) | JUDGE: PAMELA A. BARKER |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM CONTRA TO** |
| STEWARD TRUMBULL MEMORIAL | ) | **DEFENDANTS' MOTION FOR** |
| HOSPITAL, INC., et al. | ) | **SUMMARY JUDGMENT** |
| | ) | |
| Defendants | ) | |

Now comes Plaintiff Jeanne King ("King"), by and through counsel, and hereby submits this Memorandum Contra to Defendants' Joint Motion for Summary Judgment.  King shall limit her arguments to defending the failure of Defendant Steward Trumbull Memorial Hospital, Inc. ("Hospital") to afford her a reasonable accommodation of her disability under the laws of the State of Ohio.  Even though the federal law claims are not being pursued, the individual person Defendants have been dismissed (see R.54 Stipulated Dismissal), the Hospital is a Delaware corporation, and the amount in controversy (comprising lost pay and benefits, compensatory damages, punitive damages, and potential attorney fees and costs) is greater than $75,000, therefore the Court maintains jurisdiction based on diversity grounds. *28 U.S.C. § 1332(a) and (c)(1)(B).*

## I.  Statement of the Facts

### A.  King was a long-time Nurse suffering from chronic asthma issues.

King started working for the Hospital as a Student Nurse in July of 2002, and became a full-fledged licensed Nurse for the Hospital in October of 2002. (King TR 41, R.44 PageID # 200)  From October of 2002 until the Hospital discharged her from employment on June 4, 2017,

1

King worked almost solely in the Critical Care area of the Hospital. (King TR 41, R.44 PageID #200) King's supervisor throughout her employment in Critical Care was Director of Emergency Services Dale Bungard ("Bungard"). (King TR 42, 62 R.44 PageID # 201, 221; Bungard TR 2, R.50 PageID # 1390) King had suffered from stress-induced and allergy-induced asthma that became a more serious problem for her beginning in late-2013 to early-2014. (King TR 94, 96, R.44 PageID # 253, 255) When King's asthma flared up, she was totally incapacitated. (King TR 96, R.44 PageID # 255) Bungard was well aware of King's problems with asthma, and that it caused her to need occasional time off work. (King TR 51-53, 99, R.44 PageID # 210-12, 258; Bungard TR 22-23, R.50 PageID # 1410-11) Fellow Hospital workers sometimes tried to accommodate King at work by giving her easier (less moving about) assignments on days she was having breathing problems. (King TR 97, R.44 PageID # 256)

### B. King's asthma issues increased in severity, forcing her to be absent from the workplace periodically.

King's asthma became more and more severe throughout 2016 and early-2017, and caused her to miss so much work that she was periodically denied Family Medical Leave Act ("FMLA") leave for this chronic serious health condition due to not having worked 1,250 hours in the twelve months immediately prior to her leave. (King TR 73-74, 134-37, R.44 PageID # 232-33, 293-96) On April 28, 2017, King was forced from the workplace before the end of her shift due to being unable to breathe properly. (King 101, 103, R.44 PageID # 260, 262) April 28, 2017 was the last day King ever worked at the Hospital. (King 101, 103, R.44 PageID # 260, 262) The severity of King's asthma problems did not abate over the following five (5) weeks, even causing a trip to the Hospital's Emergency Room for treatment on May 15, 2017. (King TR 113, PageID # 272) Given her 3-days per week schedule, King called off for a total of 14 days in

May 2017. (King TR 196, R.45 PageID # 711)  For every day King could not work, she called in to the Hospital Staffing Department, and/or to Bungard telling them the reason for her leave. (e.g. King TR 55-56, 111, 113, R.44 Page ID # 214-15, 260, 262; King TR 232-33, 235-37, R.45 PageID # 747-48, 750-52)  King met the requirement to call at least two (2) hours before her shift began for all those days off. (King TR 56, 67, 70-71, R.44 PageID # 215, 226, 229-30)  Had King not met her call-off requirement, she would have been treated as a No-Call / No-Show and would have been subject to immediate termination for two (2) such days, which never occurred and was not the reason given for her discharge. (King Tr 56, R.44 PageID # 215; Bungard TR 31, R.50 PageID # 1419)

### C.  King's chronic asthma issues forced her from the workplace in the Spring of 2017 for a more extended period than she initially expected.

Initially, King treated her time off for asthma that began on April 28, 2017 on a day-by-day basis, not knowing whether it was a short-lived minor flare-up issue that might be handled relatively swiftly. (King TR 89-91, R.44 PageID # 248-50)  King's employment was governed by a Collective Bargaining Agreement. (King TR 64-65, R.44 PageID # 223-24; King Dep. Ex. 3, R.44 PageID # 328-413)  It was King's reasonable understanding from her reading of the CBA that leaves other than FMLA had to be applied for two weeks in advance, and required at least three (3) consecutive days off work. (King TR 72, 89-91, R.44 PageID # 231, 248-50; see King Dep. Ex. 3, pp. 51-53, PageID # 382-84)  Bungard never told King that she should have applied for a reasonable accommodation or for any particular type of leave of absence, though he knew reasonable accommodation requests were handled through Hospital Human Resources. (King TR 52, 99, R.44 PageID # 211, 258; Bungard TR 40, R.50 PageID # 1428)  King's understanding of the rules finally led her to contact the Hospital's third-party leave administrator, FMLASource,

on May 19, 2017. (King Tr 196-97, R.45 PageID # 711-12)  Initially, King applied for FMLA leave, but was immediately rebuffed by FMLASource, being wrongly told she had only worked about 300 hours in the prior twelve (12) months. (King TR 78, R.44 PageID # 237)  King then made efforts to obtain a proper count of hours worked for some time, being directed by FMLASource to Hospital employee Cindy Burns, who then directed her to Bungard. (King TR 107-09, 111-12, 116-17, R.44 PageID # 266-68, 270-71, 275-76)  The hours-worked issue was never resolved before King's discharge, but subsequent discovery in the case has led to the conclusion that King did not have the requisite 1,250 hours worked in the prior twelve (12) months to qualify for FMLA leave as of April 28, 2017 or thereafter. (Bungard Dep. Ex. 1, PageID # 1370-76)

### D.  The Hospital denied King any meaningful opportunity at receiving a reasonable accommodation involving leave and ultimately discharged her for attendance-related issues.

There were different types of leave beyond FMLA available to employees such as King whose employment was governed by the CBA. (see King Dep. Ex. 3, pp. 51-53, R.44 PageID # 384-86)  It appears that FMLASource was a third-party administrator for all types of leave for the Hospital, i.e. both CBA and FMLA, through one unified application form. (King TR 71-72, R.44 PageID # 230-31)  However, on May 19, 2017, FMLASource specifically told King they would not talk to her about, nor process, *any type of leave* due to her lack of hours worked in the prior twelve (12) months. (King TR 114-15, R.44 PageID # 273-74)  It was well-known to both employees and their treating physicians that the Hospital itself would not accept doctor's notes or medical certifications, i.e. that only FMLASource would accept such documents on behalf of the Hospital. (King TR 125-27, R.44 PageID # 284-86)  This created a situation where King was not

allowed to submit any medical certification documents until requested by FMLASource on June 6, 2017 (days after her discharge), who finally accepted the forms. (King TR 130, R.44 PageID # 289; King Dep. Ex. 15, R.44 PageID # 655-57)  FMLASource, posthumously in regard to King's employment, granted King approved leave from May 14-June 1, 2017, but denied leave for "lack of timely notice" for April 28-May 13, 2017. (King TR 133-34, R.44 PageID # 292-93; King Dep. Ex. 14, R.44 Page ID # 650-54)  FMLASource's untimely actions did not cause the Hospital to restore King's employment.

Bungard stated unequivocally that King's absences created no short-staffing issues in his department. (Bungard TR 25, R.50 PageID # 1413)  King was released to return to work by her treating physician on June 2, 2017. (King TR 124, R.44 Page ID # 183)  Bungard called King to a meeting on June 2, 2017, which was not a day the Hospital had scheduled King to work, and informed her that she was being discharged for "failure to apply timely for leave." (Bungard TR 31, R.50 PageID # 1419)  Bungard stated that King's discharge was a joint decision between him and Hospital Human Resources, and that he cannot remember who first suggested the idea of discharge. (Bungard TR 33, 35-36, R.50 PageID # 1421, 1423-24)

In the midst of all this, the hospital changed ownership.  Steward Health Care became the new owner of Community Health Systems / Trumbull Memorial Hospital on or about May 2, 2017. This may explain why FMLASource had King's hours at only time at 374.95 and then later at 858.1 hours (Burns TR 35-37, R51, PageID #1619-1621); and that only Steward's corporate payroll office in Massachusetts could correct King's hours with FMLASource and not Cidy Burns herself.  (Burns TR 41-44, R51, PageID #1624-1628)  Then on June 2, 2017, while King was still waiting on Cindy Burns and/or Steward to correct her hours with FMLASouce, King was terminated by Steward.  As such, on June 7, 2017, King requested that a grievance be filed stating:

*I was off work under the care of my physician. I talked to FMLASource to obtain a leave and was told I was not eligible for any leave as my Employer had only turned in that I had worked 350 hours in the rolling year and I was told I had to call human resources for the hospital. I then called Cindy Burns and she told me that it was an issue with CHS and she would have to contact corporate to get the hours and she would then update FMLASource and call me back by the middle of the next week. I waited and did not hear back. I then called Dale Bungard and discussed the problem with him and he told me he would look into it and call me back. He did not call back either. I was allowed to return to work on June 3rd my scheduled Saturday. At 1:01 pm on June 2nd I was called by Dale and told that I had to come in that day for a meeting and I was not in the area. He told me if I did not come in he had to take me off the schedule for Saturday and Sunday. So I came in around 2:45 after getting back in the area. Pat Kittle and Monyq Robinson were present and he told me I was terminated and that he was told he had to terminate me by Cindy Burns.*
(Burns TR 37-38, R51-20, PageID #1631-1632)

## II.  The Hospital cannot meet the high standard for summary judgment on King's claim that it failed to offer her a reasonable accommodation for her disability.

### A.  The standard for summary judgment is difficult to achieve.

Summary judgment is guided by the standard set forth in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, (1986), and *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).  When determining summary judgment, this Court must consider all evidence in the light most favorable to King, as the non-moving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 533 U.S. 133, 150 (2000).  However, in addition, the United States Supreme Court has noted that when determining whether to grant summary judgment, a reviewing court must "disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves*, 533 U.S. at 151. (emphasis added).  Finally, this Court is also prohibited from making credibility determinations regarding such evidence. *Id.*

### B.  King easily proves her *prima facie* case for disability discrimination.

It has been settled law in the Sixth Circuit that for King to set forth a *prima facie* claim

under the ADA, she must prove that: (1) she is an individual with a disability as that is defined by the law; (2) she was qualified for the job (with or without reasonable accommodation); and (3) she was denied a reasonable accommodation for her disability and suffered an adverse action as a result of that denial. *Roush v. Weastec, Inc.*, 96 F.3d 840, 843 (6th Cir. 1996). Regarding element number three of the Roush standard, the Court must apply the burden-shifting analysis of *McDonnell Douglas/Burdine*. *Walker v. Consolidated Biscuit Co.*, 116 F.3d 1481 (Table) (6th Cir. June 26, 1997), citing *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 882 (6th Cir. 1996). The disability discrimination laws of the State of Ohio under O.R.C. §4112.01 et seq. mirror the law of the ADA, therefore King's state law claim is subject to the same analysis. *Plumbers & Steamfitters Jt. Apprenticeship Comm. v. Ohio Civil Rights Comm.*, 66 Ohio St.2d192, 196 (1981).

### 1.  King was an individual with a disability as that is defined by the law.

King had, and has, chronic asthma. (King TR 94, 96, R.44 Page ID # 253, 255)  Her asthma was not under complete control, and was quite frequently limiting to her in the major life function of breathing to the point that she could not work or perform normal daily functions. (King TR 96, R.44 Page ID # 255)  The ADA defines a disability as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." *42 U.S.C. § 12102(2)(A)*.  The regulations define a "physical impairment" as "[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, **respiratory** (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine." *29 C.F.R. § 1630.2(h)(1) (1998)* (emphasis added). Flare-up diseases such as asthma qualify as disabilities under the law if, during the flare-ups, the

person is disabled. see *Roush*, at 844, see also *Cehrs v. Northeast Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 780-81 (6th Cir. 1998). "An intermittent impairment that is a characteristic manifestation of an admitted disability is, we believe, a part of the underlying disability and hence a condition that the employer must reasonably accommodate." *Vande Zande v. Wisconsin Dep't of Admin.*, 44 F.3d 538, 544 (7th Cir.1995). This analysis is especially true when the flare-up condition is incurable and can be life threatening. see *Cehrs*, at 781. King's asthma is incurable, very limiting during flare-ups, and potentially life threatening (e.g. trip to ER on May 15, 2017), and therefore is a disability under the ADA and Ohio state law. (see King TR 96, R.44 Page ID # 255) The frequency of King's flare-ups is also significant, in that it caused her to lose so much work time as to often be unable to meet the FMLA's 1,250 hours worked requirement. (King TR 73-74, 134-37, R.44 PageID 232-33, 293-96) "[F]lare-ups caused by an underlying chronic condition may constitute a disability if they occur with sufficient frequency and are of sufficient duration and severity to substantially limit a major life activity." *Brown v. BKW Drywall Supply, Inc.,* 305 F.Supp.2d 814, 824 (S.D. Ohio 2004). The severity, frequency and duration of King's asthma flare-ups (especially the final flare-up of her Hospital employment) must cause King's asthma to be deemed a disability.

King also has a record of a disability of the flare-up variety. (see King Dep. Ex. 13, R.44 PageID # 578-649) Defendant's own medical documentation sets forth both the chronic nature of King's asthma as well as the often dangerous nature of her breathing issues. (King Dep. Ex. 13, R.44 PageID # 578-649) As it sometimes did, the severity of the condition caused her to be forced to go to the Emergency Room on May 15, 2017, as documented by Defendant's records. (see R.44 Dep. Ex. 13, PageID # 609-649)

### 2.  King was "otherwise qualified" for the position with a reasonable accommodation of leave time and was denied the reasonable accommodation, leading to the adverse action of discharge.

It is undisputed that King had the education, licensure and skills to perform her job as a Nurse at the Hospital, and that she was successful at that endeavor for many years. (King TR 41, R.44 PageID # 200)  King must establish that she "requested and was denied" a reasonable accommodation regarding her position. *Burns v. Coca-Cola Enterprises, Inc*., 222 F.3d 247, 258-59 (6th Cir. 2000). "The employee's initial burden of articulating a reasonable accommodation need not be onerous. For the purposes of a prima facie showing, the plaintiff must merely 'suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits.'" *Cehrs*, at 781, citing and quoting *Borkowski v. Valley Cent. School Dist.*, 63 F.3d 131, 138 (2d Cir.1995). "To properly request a reasonable accommodation, [King] need not use any 'magic words,' like accommodation, disability, or ADA; however, she must tie the request, in context, to her existing medical restrictions." *Longstreet v. Ind. Comm. of Ohio,* Case No. 1:14 CV 2619, *5 (N.D.Ohio May 12, 2015), citing  *Smith v. Henderson*, 376 F.3d 529, 535 (6th Cir. 2004), see also *Roebuck v. Summit Cty. Dept. of Job and Family Servs*, Case No. 5:13 CV 2816, *5 (N.D.Ohio May 30, 2014), citing *Smith v. Henderson*; see also *Mestas v. Town of Evansville*, Case No. 17-8092, *7-8 (10th Cir. Sept. 6, 2019), citing *EEOC v. C.R. England Co.,* 644 F.3d 1028, 1049 (10th Cir. 2011).

The last actual day she worked, King had to leave early due to being unable to breathe well enough to do her job. (King TR 101, 103, R.44 PageID # 260, 262)  During the last month before her discharge, King called her supervisor from the Hospital's Emergency Room where she was being treated for a severe asthma flare-up. (King TR 241, R.45 PageID # 755)  Each day that King asked for time off work she explained that it was because of her asthma flaring up so

badly that she could not work. (e.g. King TR 55-56, 111, 113, R.44 Page ID # 214-15, 260, 262; King TR 232-33, 235-37, R.45 PageID # 747-48, 750-52)  King met the Hospital's requirement to call at least two (2) hours before her shift began for all those days off. (King TR 56, 67, 70-71, R.44 PageID # 215, 226, 229-30)  Had King not met her timely call-off requirement, she would have been treated as a No-Call / No-Show and would have been subject to immediate termination for two (2) such days, which was not the reason given for her discharge. (King TR 56, R.44 PageID # 215; Bungard TR 31, R.50 PageID # 1419)  Her long-time immediate supervisor was well aware of her asthma issues, and of the fact that King's absences were tied to her asthma. (King TR 51-53, 99, R.44 210-12, 258; Bungard TR 22-23, R.50 PageID # 1410-11)

The Hospital's position that King had to apply for her reasonable accommodation leave through FMLASource is also not supported by the law or the facts.  Much as King did not have to use "magic words," she is also not legally bound to use a "magic process."  King was not, in fact, applying for any of the leaves contained in the CBA and administered by FMLASource, nor does the law of the ADA require her to do so. *Cehrs*, at 782.  "It is not clear why unpaid leave should be analyzed differently from any other proposed accommodation under the ADA." *Id.*, citing *Norris v. Allied-Sysco Food Services, Inc.,* 948 F.Supp. 1418 (N.D.Cal.1996).  She was initially looking at her asthma flare-up situation that began on April 28, 2017 on a day-to-day basis, and not necessarily as a long-term leave situation. (King TR 89-91, R.44 PageID # 248-50)  FMLASource, in fact, refused to talk to her about *any* medical-related leave because of what they viewed as the paucity of hours worked at the time of her request. (King TR 114-15, R.44 PageID # 273-74)  While it turned out that King had worked far more than the 300 hours in the prior 12 months that FMLASource was led to believe, King still had not worked enough hours to qualify for FMLA leave. (Bungard Dep. Ex. 1, R.49-1 PageID # 1370-78)

King reasonably felt the leaves described in Article 33 of the CBA were inapplicable to her situation. (see R.44 Dep. Ex. 3, pp. 51-53, Page ID # 382-84)  Those leaves specifically required the request be made *two weeks in advance of the leave*, and were for extended leaves, which King did not perceive her leave to be in its early stages. (see R.44 Dep. Ex. 3, pages 51-53, Page ID 382-84)  For its part, FMLASource refused to accept any medical restriction or certification information from King during the month of May while she was still employed. (King TR 114-15, R.44 PageID # 273-74)  The Hospital's well-known policy was not to accept any doctor's notes or medical certification information except through FMLASource. (King TR 125-27, R.44 PageID # 284-86))  King's treating physician expressed his awareness of the Hospital's "no note" policy, and did not give King a doctor's note even for her trip to the ER on May 15, 2017. (King TR 126-27, R.44 PageID # 285-86)  FMLASource finally accepted medical documentation from King on June 6. 2017, i.e. after King was discharged, but all that documentation was then untimely to cover any leaves set forth in the CBA, and therefore did not change the Hospital's discharge determination. (see Bungard TR 22-23, R.50 PageID # 1410-11)  In any event, King met the requirement to call at least two (2) hours before her shift began for all her days off. (King TR 56, 67, 70-71, R.44 PageID # 215, 226, 229-30)  King was not discharged for being No-Call / No-Show. (Bungard TR 31, R.50 PageID # 1419)

### 3.  The Hospital would have experienced no undue hardship from giving King the necessary unpaid time off work, and would likely have benefited from allowing the reasonable accommodation.

The accommodation of time off work was reasonable because the benefits exceeded the costs. see *Borowski*, at 138.  The Hospital's need for Nurse coverage in King's department never went unmet because King took time off work. (Bungard TR 25, R.50 Page ID # 1413)  Had the Hospital accommodated King until she and her caregivers could get her asthma under control,

the Hospital would have retained a highly experienced and skilled Nurse who was familiar with the Hospital's systems and protocols. As for the argument that attendance was required, the Sixth Circuit has held that "the presumption that uninterrupted attendance is an essential job requirement" therefore barring leave as a reasonable accommodation is not supported by the law. *Cehrs*, at 782. Again, the ADA reasonable accommodation analysis, including that of any alleged "undue hardship," remains the same. *Id.*, citing *Norris v. Allied-Sysco Food Services, Inc.,* 948 F.Supp. 1418 (N.D.Cal.1996). If an employer cannot show that an accommodation unduly burdens it, then there is no reason to deny the employee the accommodation. *Id.*

The Hospital also cannot claim that King's leave time was unduly burdensome to it because it granted longer continuous leaves as a matter of policy. (see King Dep. Ex. 3, pp. 51-53, PageID # 382-84), see *Hodge v. Henry Cty. Med. Ctr.*, 341 F.Supp.2d 968, 978-79 (W.D.Tenn. 2003) In addition, Bungard admitted that the department in which King worked suffered no short-staffing as a result of King's absences. (Bungard TR 25, R.50 PageID # 1413)

## III. Conclusion

King was entitled to a reasonable accommodation of time off work to deal with the severity of her disabling asthma condition. The Hospital had knowledge of the reason for the requested leave, and cannot cite any undue hardship in granting such leave rather than discharging King from employment. The Hospital's Motion for Summary Judgment must be denied regarding King's claims against the Hospital under Ohio's disability discrimination law.

Respectfully Submitted,

*/s/ Irene K. Makridis*
Irene K. Makridis, 0016760
Dimitrios N. Makridis, 0089131
Attorneys for Plaintiff

12

155 S. Park Ave., Suite 160
Warren, OH  44481
T: (330) 394-1587 | F: (330) 394-3070
office@makridislaw.com
dimitrios@makridislaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of January, 2021,  the foregoing was served via

electronic mail to bniedecken@littler.com, BROOKE E. NIEDECKEN, and

ssquillante@littler.com, SARAH K. SQUILLANTE, Counsel for Defendants, Littler Mendelson,

PC, 21 E. State Street, 16th Floor, Columbus, OH  43215.

/s/ Irene K. Makridis
Irene K. Makridis,
Attorney for Plaintiff