# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **JEANNE KING,** | **Case No. 4:19-cv-720** |
| **Plaintiff,** | |
| **-vs-** | **JUDGE PAMELA A. BARKER** |
| **STEWARD  TRUMBULL  MEMORIAL HOSPITAL,  INC.  d/b/a  TRUMBULL REGIONAL MEDICAL CENTER,** | **MEMORANDUM OPINION AND ORDER** |
| **Defendant** | |

Currently pending is the Motion for Summary Judgment filed by Defendant Steward Trumbull Memorial Hospital, Inc., d/b/a Trumbull Regional Medical Center ("Steward").[1]  (Doc. No. 49.)  Plaintiff Jeanne King ("King") filed a Memorandum Contra to Defendant's Motion for Summary Judgment, to which Steward replied.  (Doc. Nos. 56, 57.)  For the following reasons, Steward's Motion for Summary Judgment is GRANTED.

## I.    Background

Jeanne King worked as a nurse at Steward from October 2002 (then under different ownership) until her employment was terminated in June 2017.  (Doc. No. 56, PageID# 1829-30.)  For most of her 15 years at Steward, King worked as a critical care nurse.  (*Id.*)  From approximately 2007 through 2017, King reported to supervisor Dale Bungard.  (Doc. No. 44, PageID# 201.)

---

[1] Plaintiff initially brought this lawsuit against Steward, as well as Dale Bungard and Cindy Burns, in their individual capacities.  (*See* Doc. No. 22-2.)  However, the parties stipulated to, and the Court approved, the dismissal of Bungard and Burns with prejudice on January 25, 2021.  (Doc. No. 55.)  Thus, the Court will refer to Steward as the singular Defendant in this matter.

As a young adult, King was diagnosed with asthma.  Her asthma grew to be severe around 2013 or 2014.  (*Id.* at PageID# 253.)  According to King, her asthma was seasonal allergy- and stress-induced, meaning that King's asthma tended to flare up when she experienced seasonal allergies and/or significant amounts of stress.  (*Id.* at PageID# 255.)  According to King, if she had a bad asthma attack, it prevented her from performing daily activities, like washing dishes and cooking. (*Id.*)

Sometimes, King's asthma prevented her from performing her work duties.  (*Id.*)  King never discussed accommodations or altering her job duties because of her asthma with Bungard or with Cindy Burns, a human resources employee at Steward.  (*Id.*)  Instead, King would call in sick if she was unable to come in due to her asthma, or, if she was already working and experiencing breathing problems, King's coworkers tried to provide her with easier assignments that required less moving around on King's part.  (*Id.* at PageID# 256; Doc. No. 56, PageID# 1830.)  According to King, Bungard was generally aware that King had asthma and that King's asthma sometimes caused her to need occasional time off work.  (Doc. No. 44, PageID# 210, 258.)  Bungard knew King "had asthma" and that "she was off sometimes because of her asthma."  (Doc. No. 50, PageID# 1411.)

King's asthma worsened in 2016 and 2017.  As a result, King missed significant amounts of work because she was incapacitated by her severe asthma.  (Doc. No. 56, PageID# 1830.)  Indeed, King took so much leave for her asthma in 2016 and 2017 that she was periodically denied Family Medical Leave Act ("FMLA") leave during that time period because she had not worked the requisite 1,250 hours to qualify for FMLA leave.  (*Id.*)

On April 28, 2017, King experienced such a severe asthma flare-up that she left the hospital prior to the end of her shift.  (*Id.*)  King never returned to work at Steward.  (*Id.*)  Beginning with the

2

evening of April 28, 2017, King began calling off her previously scheduled work shifts.  (*Id.* at PageID# 1831.)  King took this day by day approach because she did not know "whether it was a short-lived minor flare-up" that would pass quickly or a more serious flare-up.  (*Id.*)  As of April 28, 2017, King was scheduled to work three twelve-hour shifts per week.  (Doc. No. 44, PageID# 207.)  King called off a total of fourteen days throughout May 2017.  (Doc. No. 56, PageID# 1830-31.)  King contends that each day that she called in sick, she told Steward that she was out sick due to a severe asthma flare-up.  (*Id.* at PageID# 1831.)

Between April 28, 2017 and May 15, 2017, King sought treatment for her asthma from Dr. R.N. Alam.  (Doc. No. 44, PageID# 272.)  According to King, Dr. Alam told her that she was not able to return to work because he needed to determine which medications would work best for King and was changing King's prescriptions to find a combination that would end the flare-up.  (*Id.*)  However, Dr. Alam did not provide King with any documentation establishing that it was medically necessary for King to be absent from work between April 28, 2017 and May 15, 2017.  (*Id.*)  According to King, Dr. Alam did not provide her with such paperwork because it was Steward's policy that all leave paperwork be handled through FMLASource, not Steward.  (*Id.* at PageID# 273.)

On May 15, 2017, King's asthma flared up so severely that she sought treatment in Steward's emergency room.  (Doc. No. 56 at PageID# 1830; Doc. No. 44, PageID# 272.)  According to King, she called the hospital supervisors from inside Steward's own emergency department to notify them that she would not be at work the following day due to the severity of her asthma flare-up.  (*Id.*)

On May 19, 2017—21 days after she left her shift early on April 28, 2017—King called FMLASource, Steward's third-party leave administrator.  (Doc. No. 45, PageID# 196-97.)  King contends that during this May 19, 2017 phone call, she sought and applied for FMLA leave, but was

3

"immediately rebuffed" because FMLASource incorrectly believed King had only worked approximately 300 hours in the previous twelve months.[2] (Doc. No. 56, PageID# 1832.) According to King, FMLASource refused to discuss, or process any application for, *any* type of leave because King had worked too few hours. (*Id.*) During this call, King did not tell FMLASource how long of a leave she needed. (Doc. No. 44, PageID# 269.) According to King, as of May 19, 2017, no doctor had provided her with a specific amount of time that King should refrain from work. (*Id.*)

Immediately after King spoke to FMLASource, she called Burns to ask that Steward fix the number of hours she had worked in the previous twelve months in its computer system. (*Id.* at PageID# 270.) King did not tell Burns at that point how long of a leave King needed for her asthma. (*Id.*) Approximately one week later, King called Bungard to see if he could fix her number of hours worked in Steward's computer system. (*Id.* at PageID# 270-71.) King told Bungard that she was attempting to apply for the hospital's medical leave and FMLA leave, but that Burns had not yet fixed the issue with King's hours. (*Id.* at PageID# 271.) King asked Bungard what else she could do to fix her missing hours. (*Id.*) According to King, Bungard told her that he would check into the issue and get back to King. (*Id.*) King did not tell Bungard during that call that she needed a medical leave of absence for a specific period of time. (*Id.*)

As of June 2, 2017, King had been absent from work for more than a month and had not yet obtained an approved leave of absence. On June 2, 2017, Bungard informed King that her employment was terminated for "failure to apply timely for leave." (*Id.*)

---

[2] Steward, on the other hand, contends that King did not request any leave on May 19, 2017, but merely inquired whether she had worked enough hours in the previous twelve months to qualify for FMLA leave. (Doc. No. 49, PageID# 1348.) According to Steward, FMLASource "did not initiate a leave request based upon this communication since" King simply asked about eligibility. (*Id.*)

On June 5, 2017, King contacted FMLASource to ask if her hours had been updated.  (Doc. No. 45, PageID# 734.)   According to the Declaration of Amanda Fischer, an employee of FMLASource's parent company ComPsych, King "contacted FMLASource on June 5, 2017 to request an FMLA leave of absence."  (Doc. No. 49-2, ¶ 8.)  At that time, FMLASource determined that King was still ineligible for FMLA leave because King had not worked 1,250 hours in the preceding 12 months.  (*Id.*)  FMLASource then evaluated whether King was entitled to any other type of leave from Steward.  (*Id.* at ¶ 9.)  FMLASource subsequently entered a request for non-FMLA medical leave on King's behalf on June 5, 2017.  (Doc. No. 44, PageID# 650, Ex. 14.)  FMLASource sent King a letter, dated June 5, 2017, confirming that it had received King's request for non-FMLA medical leave and attached a form titled "FMLA or Leave of Absence Medical Certification" to its letter.  (*Id.*)  For King's "leave to be designated under Non-FMLA Medical," King needed to "have the attached certification completed" by her physician and returned to FMLASource by June 21, 2017.  (*Id.*)

On June 6, 2017, Dr. Alam completed the "FMLA or Leave of Absence Medical Certification" form.  (Doc. No. 44, PageID# 655, Ex. 15.)  Dr. Alam indicated that King should be granted a leave of absence from April 28, 2017 through June 1, 2017 due to "chronic obstructive asthma."  (*Id.*)  Dr. Alam further indicated that King would be able to return to work without limitations on June 2, 2017.  (*Id.* at PageID# 657.)

Initially, FMLASource denied King's request for non-FMLA medical leave from April 28, 2017 until May 30, 2017 under Steward's five-day lookback period rule, but granted King non-FMLA medical leave from May 31, 2017 until June 1, 2017.  (Doc. No. 49-2, ¶ 9.)  In response, King contacted FMLASource and asserted that her May 19, 2017 call was a request for leave.  (*Id.* at ¶ 10.)

5

Subsequently, FMLASource revised its decision and evaluated King's request as if she made the leave request on May 19, 2017, instead of June 5, 2017. (*Id.*) On June 22, 2017, FMLASource denied King's leave request for the period of April 28, 2017 through May 13, 2017 because King "did not provide sufficient notice for leave." (Doc. No. 44, PageID# 658, Ex. 16.) However, FMLASource ultimately approved King's request for non-FMLA medical leave for the period of May 14, 2017 through June 1, 2017. (Doc. No. 44, PageID# 658, Ex. 16.) FMLASource's retroactive approval of King's non-FMLA medical leave for May 14, 2017 through June 1, 2017 did not affect the termination of King's employment. (Doc. No. 56, PageID# 1833.)

King filed her initial complaint on April 1, 2019. Subsequently, she filed an Amended Complaint on April 28, 2020. (Doc. No. 22-2.) In her Amended Complaint, King asserts three causes of action: (1) FMLA interference and retaliation; (2) disability discrimination and failure to accommodate under the Americans with Disabilities Act (ADA); and (3) disability discrimination and failure to accommodate under Ohio Rev. C. § 4112.01 *et seq.*

## II.    Standard of Review

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' only if based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party." *Henderson v. Walled Lake Consol. Sch.*, 469 F.3d 479, 487 (6th Cir. 2006). "Thus, 'the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'" *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (quoting *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  A fact is "material" only "if its resolution might affect the outcome of the suit under the governing substantive law."  *Henderson*, 469 F.3d at 487.

At the summary judgment stage, "[a] court should view the facts and draw all reasonable inferences in favor of the non-moving party."  *Pittman v. Experian Info. Solutions, Inc.*, 901 F.3d 619, 628 (6th Cir. 2018).  In addition, "the moving party bears the initial burden of showing that there is no genuine dispute of material fact."  *Ask Chems., LP v. Comput. Packages, Inc.*, 593 F. App'x 506, 508 (6th Cir. 2014).  The moving party may satisfy this initial burden by "identifying those parts of the record which demonstrate the absence of any genuine issue of material fact."  *Lindsey v. Whirlpool Corp.*, 295 F. App'x 758, 764 (6th Cir. 2008).  "[I]f the moving party seeks summary judgment on an issue for which it does not bear the burden of proof at trial," the moving party may also "meet its initial burden by showing that 'there is an absence of evidence to support the nonmoving party's case.'"  *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Once the moving party satisfies its burden, "the burden shifts to the non-moving party who must then point to evidence that demonstrates that there is a genuine dispute of material fact for trial."  *Ask Chems.*, 593 F. App'x at 508-09.  "[T]he nonmoving party may not simply rely on its pleading, but must 'produce evidence that results in a conflict of material fact to be solved by a jury.'"  *MISC Berhad v. Advanced Polymer Coatings, Inc.*, 101 F. Supp. 3d 731, 736 (N.D. Ohio 2015) (quoting *Cox*, 53 F.3d at 150).

## III.  Analysis

### A.  FMLA Claims

In her Opposition, King acknowledges that she is no longer pursuing her FMLA claims.  (Doc. No. 56, PageID# 1829.)  King concedes that she did not work at least 1,250 hours at Steward during

the previous twelve-month period to qualify for FMLA leave as of April 28, 2017.  (*Id.* at PageID# 1832.)

The FMLA "guarantees 'eligible employees' twelve weeks of unpaid leave during any twelve month period for certain family or medical events . . . ."  *Staunch v. Continental Airlines, Inc.*, 511 F.3d 625, 629 (6th Cir. 2008).  The FMLA defines an eligible employee as "an employee who has been employed . . . for at least 12 months by the employer with respect to whom leave is requested . . . and . . . for at least 1,250 hours of service with such employer during the previous 12-month period."  29 U.S.C. § 2611(2)(A).  An FMLA claim "cannot be maintained by a plaintiff who was not an 'eligible employee.'"  *Staunch*, 511 F.3d at 629 (quoting *Humenny v. Genex Corp., Inc.*, 390 F.3d 901, 905-06 (6th Cir. 2004).  King concedes she did not work the requisite 1,250 hours to be eligible for FMLA as of April 28, 2017.  (Doc. No. 56, PageID# 1832.)  Thus, she was not an "eligible employee" under the FMLA and her FMLA claims fail as a matter of law.

### B.     ADA Claims

In her Opposition, King acknowledges that she is also no longer pursuing her claims arising under the Americans with Disabilities Act ("ADA").  (Doc. No. 56, PageID# 1829.)

"Under the ADA, a claimant who wishes to bring a lawsuit claiming a violation of the ADA must file a charge of discrimination with the EEOC within 300 days of the alleged discrimination."  *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 309 (2000) (citing 42 U.S.C. § 12117(a); 42 U.S.C. § 2000e-5(e)(1); *Jones v. Sumser Retirement Village*, 209 F.3d 851, 853 (6th Cir. 2000)).  An employee "may not file a suit under the ADA if he or she does not possess a right-to-sue letter from the EEOC because he or she has not exhausted his or her remedies."  *Id.*

8

Steward argues that King did not file a charge of discrimination with either the EEOC or applicable Ohio agency, which bars her claim.  (Doc. No. 49, PageID# 1353.)  King does not proffer any evidence that she exhausted her administrative remedies prior to bringing her ADA claims in this suit.  Thus, King's ADA claims fail as a matter of law.

### C.  State Law Wrongful Termination Claim

In her Opposition, King indicates that she limits her "arguments to defending the failure of Defendant Steward Trumbull Memorial Hospital, Inc. . . . to afford her a reasonable accommodation of her disability under the laws of the State of Ohio."  (Doc. No. 56, PageID# 1829.)  Steward contends that this means King also abandoned her wrongful termination claim arising under Ohio law.  (Doc. No. 57, PageID# 1858.)  The Court agrees.  King has adduced no evidence to support a claim for wrongful termination under Ohio law.  Thus, King's claim for wrongful termination under § 4112.01, *et seq.* fails as a matter of law.

### D.  Failure to Accommodate

In King's sole remaining claim, she alleges that Steward failed to reasonably accommodate her disability by refusing to provide her with medical leave, in violation of Ohio Rev. C. § 4112.01, *et seq*.  (Doc. No. 22-2, ¶¶ 36-37, 41.)  Because Ohio's disability discrimination statute is nearly identical to the ADA, the Ohio Supreme Court has directed Ohio courts to look to federal ADA law when interpreting Ohio's disability discrimination statute.  *See Columbus Civ. Serv. Comm'n v. McGlone*, 697 N.E.2d 204, 206-07 (Ohio 1998) ("The federal Americans with Disabilities Act ('ADA') is similar to the Ohio handicap discrimination law. We can look to regulations and cases interpreting the Federal Act for guidance in our interpretation of Ohio law.").

9

To establish a *prima facie* case of disability discrimination for failure to accommodate, King must demonstrate all of the following: "(1) she is disabled within the meaning of the Act; (2) she is otherwise qualified for the position (with or without reasonable accommodation); (3) her employer knew or had reason to know about her disability; (4) she requested an accommodation; and (5) the employer failed to provide the necessary accommodation." *Barber v. Chestnut Land Co.*, 63 N.E.3d 609, 626 (Ohio 2016) (citing *DiCarlo v. Potter*, 358 F.3d 408, 419 (6th Cir. 2004) (overruled on other grounds by *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009))).  "The burden is placed on the plaintiff to propose an accommodation that is objectively reasonable." *Id.* (citing *Keith v. County of Oakland*, 703 F.3d 918, 927 (6th Cir. 2013)).  If Plaintiff establishes her *prima facie* case, the burden shifts to the employer to demonstrate that such an accommodation "would impose an undue hardship on the conduct of the employer's business." *Id.*

### 1.     Whether King is Disabled

In its Motion, Steward does not address whether King's asthma constituted a legally recognizable disability.  (*See* Doc. No. 49.)  In her Opposition, King asserts that her chronic asthma qualified as a disability because it is a "physical . . . impairment that substantially limits one or more of" King's "major life activities."  (Doc. No. 56, PageID# 1835.)  In its Reply, Steward concedes that, "for purposes of summary judgment only," King's asthma "constitutes a legally recognizable disability."  (Doc. No. 57, PageID# 1849.)

King presents—and Steward does not refute—evidence that her asthma flare-ups were severe, substantially limited one or more major life activities, and occurred periodically throughout 2016 and 2017.  (*See, e.g.,* Doc. No. 44, PageID# 578, King Dep. Ex. 13.)  Thus, the Court concludes that King's chronic asthma rendered her disabled.

10

### 2. Whether King is Otherwise Qualified

According to Steward, King's failure to accommodate claim fails because King's attendance issues rendered her unqualified for her nursing job, with or without an accommodation. (Doc. No. 49, PageID# 1355.) Steward argues that "there is insufficient evidence to show that Plaintiff could perform one of the essential functions of her job," namely regular, in-person attendance. (*Id*.) Steward argues that the role of nurse required in-person attendance, but King could not meet this requirement because she so frequently missed work throughout 2016 and 2017 and was absent for five weeks beginning on April 28, 2017. (*Id.* at PageID# 1355-56.) In her Opposition, King argues that she was qualified for her role as a nurse because she "had the education, licensure and skills to perform her job as a Nurse at the Hospital, and that she was successful at that endeavor for many years." (Doc. No. 56, PageID# 1837.)

An employee who is unable to "meet the attendance requirements of the job at issue cannot be considered a 'qualified' individual protected by the ADA." *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (6th Cir. 1998); *see also Williams v. AT & T Mobility Servs. LLC*, 847 F.3d 384, 392 (6th Cir. 2012) ("Regular attendance is especially likely to qualify as an essential job function after this court's recent en banc holding that '[r]egular, in-person attendance is an essential function . . . of most jobs, especially the interactive ones.' ") (quoting *EEOC v. Ford Motor Co.*, 782 F.3d 753, 762-63 (6th Cir. 2015) (en banc)); *Burdine v. Avery Dennison Corp.*, No. 98-L-269, 2000 WL 714390, at *9 (Ohio 11th Dist. Ct. App. June 2, 2000) ("Regular attendance is an essential function of any position."); *Melange v. City of Center Line*, 482 F. Appx. 81, 84 (6th Cir. 2012); *Coles v. Johnny Appleseed Broadcasting Co.*, 479 F. Supp. 3d 585, 597-98 (N.D. Ohio 2020).

11

For the following reasons, the Court agrees with Steward that King's failure to accommodate claim fails because she cannot establish that she was an "otherwise qualified individual." First, King admitted in her deposition that "regular attendance at the hospital" was one of her main duties as a critical care nurse. (Doc. No. 44, PageID# 222.) King admitted that as a nurse, she could not perform her work remotely because she needed to see, touch, and assess patients in person. (*Id.* at PageID# 220.) Thus, according to King's own admissions, King could only perform patient care if she was present at the hospital.

Second, on April 28, 2017, King left her shift early and was subsequently absent from work for more than a month before she was terminated on June 2, 2017. (*Id.* at PageID# 260, 276-77, 283.) After King stopped coming to work on April 28, 2017, she offered no indication as to when she would return. (Doc. No. 56, PageID# 1838, indicating that she treated her asthma flare-up on a "day-to-day basis".) King also offers no evidence to suggest that she attempted to seek any leave whatsoever until at least May 19, 2017, nearly a month after her absence began. (Doc. No. 45, PageID# 711-12.) King offers no evidence to refute the fact that she missed more than a month of work without any leave prior to her termination.

Third, even prior to April 28, 2017, King was frequently absent from the hospital. (*Id.* at PageID# 251.) Indeed, King received several warnings throughout 2016 and 2017 for excessive absenteeism. (*Id.*; *see also* Doc. No. 44, PageID# 444-55, King Dep. Ex. 6.) King offers no evidence to refute the fact that she missed significant amounts of work prior to the absence that instigated her termination. Under these circumstances the Court finds that King cannot demonstrate that she was able to meet the attendance requirements of her job. *See Burdine*, 2000 WL 714390, at *9 ("[I]f an employee is unable to comply with attendance requirements, he or she is unqualified for the job.").

12

The Court is not persuaded by King's assertion that she is qualified for the nurse position because she "had the education licensure and skills to perform her job as a Nurse at the Hospital, and that she was successful at that endeavor for many years." (Doc. No. 56, PageID# 1837.) King appears to have been a successful nurse—when she was present at the hospital. (*See, e.g.,* Doc. No. 50, PageID# 1430, discussing King's performance evaluations.) However, as the Ohio Court of Appeals concluded in *Hayes v. Cleveland Pneumatic Co.*, the frequency of an employee's absences can demonstrate that an employee is otherwise incapable of performing his or her job. *Hayes v. Cleveland Pneumatic Co.*, 634 N.E.2d 228, 232 (Ohio 8th Dist. Ct. App. 1993). In *Hayes*, the court considered whether an employee, who suffered from a chronic health condition, established that his employer discriminated against him based on disability after the employer fired the employee for his chronic unexcused absences stemming from his health condition. *Hayes v. Cleveland Pneumatic Co.*, 634 N.E.2d 228, 232 (Ohio 8th Dist. Ct. App. 1993). The court concluded that, under Ohio's anti-discrimination statute, "when the employer can demonstrate a factor such as chronic unexcused absences which adversely affect job performance, the discharge is not unreasonable under the anti-handicap discrimination law." *Id.* at 230. According to the *Hayes* court, the plaintiff failed "to meet his burden to produce evidence that he [was] capable of performing his job." *Id.* at 232. The court concluded:

> The several leaves taken by Hayes demonstrate his inability to perform his job. The fact that he did his job well when he showed up for work was insufficient evidence. *It was not the quality of his performance, but the frequency of his absences that demonstrated that he was incapable of doing his job.* Therefore, Hayes failed to present evidence of discrimination upon which reasonable minds could differ.

*Id.* (emphasis added).

13

Like *Hayes*, the issue here is not whether King possessed the requisite qualifications to work as a nurse or whether her performance, when she was present, was adequate. Rather, both King and the *Hayes* plaintiff were chronically absent from their jobs. Like in *Hayes*, King fails to demonstrate that she is capable of regular, in-person attendance, which is an essential function of her nursing job. *Id.* at 232.

Accordingly, King cannot establish that she was a "qualified" individual under Ohio's anti-discrimination statute. Because King is not qualified for the nursing position, with or without accommodation, she cannot establish her *prima facie* case that Steward failed to reasonably accommodate her and her failure to accommodate claim fails. *See Gantt*, 143 F.3d at 1047.

While the Court's conclusion that King is not qualified for the position is sufficient, on its own, to warrant granting Steward's Motion for Summary Judgment, the Court will briefly address the remaining elements of King's *prima facie* case below.

### 3. Whether Steward Knew King was Disabled

Steward argues that King's failure to accommodate claim also fails because King cannot establish that Steward knew King was disabled. (Doc. No. 49, PageID# 1356.) According to Steward, while King's direct supervisor Bungard knew that King had asthma, he did not know the severity of her asthma, did not consider King to be disabled, and was unaware of why King took her leaves of absence. (*Id.*) According to Steward, Bungard's knowledge that King sought and took various leaves of absence during her employment does not equate to his having knowledge of her disability. (*Id.*) In her Opposition, King contends that Bungard was "well aware" of King's asthma and "of the fact that King's absences were tied to her asthma." (Doc. No. 56, PageID# 1838.)

14

"An employer has notice of the employee's disability when the employee tells the employer that he is disabled. *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 450 (6th Cir. 1999) (citing *Gantt*, 143 F.3d at 1046). An "employer is not required to speculate as to the extent of the employee's disability or the employee's need or desire for an accommodation." *Id.* Additionally, an employer's knowledge that "an employee has health problems . . . is not the same as knowing that the employee suffers from a disability." *Brown v. BKW Drywall Supply, Inc.*, 305 F. Supp. 2d 814, 829 (S.D. Ohio 2004).

In *Brown v. BKW Drywall Supply, Inc.*, the plaintiff suffered from loin pain hematuria syndrome, which caused severe pain in his back and swelling in his feet and made it painful to stand or walk. *Brown*, 305 F. Supp. 2d at 817. The plaintiff's supervisors and coworkers were aware that the plaintiff suffered from pain and swelling and knew that sometimes the plaintiff would take medical leave as a result. *Id.* The defendant terminated the plaintiff's employment for poor job performance, but the plaintiff alleged that the defendant fired him because he was disabled by his medical condition. *Id.* at 818, 822. The court concluded that even though the plaintiff's supervisors were aware of his immediate problem (*i.e.*, his pain and swollen feet), the plaintiff failed to notify his employer that the problem "was traceable to a disability." *Id.* at 829 (citing *Hammon*, 165 F.3d at 450). The court observed that "many medical conditions do not qualify as disabilities for purposes of the ADA" and that often, "the only way an employer can know whether an employee's health problems constitute a disability is if the employee provides it with some form of medical documentation." *Id.* The *Brown* court observed that it was undisputed that the plaintiff never provided his employer with any medical documentation to substantiate a disability and concluded

15

that "[t]o construe an employer as having notice of an employee's disability every time an employee is absent from work for a medical reason would defy common sense."  *Id.*

This case is analogous to *Brown*.  Like in *Brown*, King's argument that Steward knew of her disability hinges on her supervisor's knowledge of her medical condition.[3]  (Doc. No. 56, PageID# 1838.)  At best, King establishes that Bungard knew that King had asthma, but King fails to establish that Bungard or Steward knew that King's asthma was a disabling condition.

Although Bungard was aware of King's asthma, it is unclear whether Bungard knew that King's asthma was so debilitating that it was a disabling condition.  During her deposition, King testified as follows:

> Q: Other than Dale knowing that you had asthma, did you ever tell him that your asthma was so debilitating that it was disabling?
>
> A: Yes, I did.  When I called him to report off of work, I would tell him those—when I was reporting off work, that would be the times where they would be doing treatments in a doctor's office or I would be getting shots of medications of Solu-Medrol, different steroids, in order to try and get the wheezing and everything under control.  And when I would call him, I would tell him that I literally could not breathe.  Most of the time when it was that bad, I could barely talk.  And I would tell him that I can't get off of the couch without being out of breath and wheezing.

(Doc. No. 44, PageID# 210-11.)  King does not indicate when she placed such calls to Bungard, whether she made such calls between April 28, 2017 and June 2, 2017, how often she called Bungard about her asthma, whether she also called him every time she was absent from work because of her asthma, or identify specific times that she told Bungard that her asthma was so severe that she could not breathe, talk, or get off the couch without wheezing.  (*Id.*)

---

[3] Indeed, the extent of King's argument as to Steward's knowledge of her disability reads as follows: "Her long-time immediate supervisor was well aware of her asthma issues, and of the fact that King's absences were tied to her asthma." (Doc. No. 56, PageID# 1838.)

16

Additionally, King's subsequent testimony regarding the hospital's absence reporting process suggests that she did not communicate with Bungard every time that she called off work. King testified that she followed hospital policy and reported her day shift absences to the hospital staffing office. (*Id.* at PageID# 214-15.) King testified that she was not required to also report her absence to her immediate supervisor (*i.e.*, Bungard). (*Id.*) Further, King testified that she also followed the hospital's policy when reporting her non-day shift absences by calling the hospital operator and paging the supervisor on call. (*Id.*) According to King, the supervisor on call "was a different supervisor all the time" and "wasn't particularly your supervisor, it was the house supervisor." (*Id.*) Thus, while King contends in her Opposition that Bungard was "well aware" of the severity of her asthma symptoms, King offers no other evidence to establish Bungard's awareness of the debilitating nature of her asthma flare-ups.

Moreover, King admitted that she did not refer to her asthma as a "disability" to Bungard. (*Id.* PageID# 210-11.) King further admitted that she did not inform Bungard that her absence from April 28, 2017 through June 2, 2017 was related to a "disability." (*Id.*) King also admitted that when she sought Bungard's assistance in ascertaining her leave eligibility in late May 2017, she told Bungard that her leave was related to her asthma, not a disability. (*Id.* at PageID# 258.) King also never attempted to provide Bungard, or anyone else at Steward, with any medical documentation that indicated that her asthma was so debilitating that it should be treated as a disability.

Similarly, Bungard's deposition testimony and Declaration do not indicate that he had a detailed understanding of the severity of King's asthma flare-ups. Bungard testified that he did not recall specific times when King would come to work suffering from shortness of breath or coughing, but that it "was common knowledge" that King had asthma. (Doc. No. 50, PageID# 1394.) Bungard

17

further testified that he knew King had asthma but did not know that King ever required hospitalization. (*Id.* at PageID# 1407.) Bungard also testified that he did not know the reason why King took FMLA leave, but knew King "was off sometimes because of her asthma." (*Id.* at PageID# 1411.)

At best, these facts establish that Bungard knew King had asthma and periodically missed work because of her asthma. However, "asthma" is not synonymous with "disability." *See Brown*, 305 F. Supp. at 829. Determining whether a physical impairment substantially limits a person's major life activities "is an individualized inquiry." *Id.* at 824. "No impairment constitutes a disability per se; rather, an impairment is a disability if it limits the major life activities of the particular individual who is impaired." *Id.* Asthma, depending on the individualized inquiry, *may* be severe enough to rise to the level of a disability, but that does not mean, as King implies in her opposition, that if an employer knows an employee has asthma, then the employer *also* knows that the employee is *disabled*. *See, e.g., Brown*, 305 F. Supp. at 829 ("To construe an employer as having notice of an employee's disability every time an employee is absent from work for a medical reason would defy common sense.").

The onus remained on King to alert Steward to the fact that her asthma was so debilitating that it qualified as a disability. *Id.* at 829 (citing *Hammon*, 165 F.3d at 449-50); *see also Mishak v. Serazin*, No: 1:17-cv-1543, 2018 WL 5620091, at *22 (N.D. Ohio Oct. 30, 2018) (concluding plaintiff did not establish employer had notice of plaintiff's disability because plaintiff had not pointed to evidence that, in his communications with his employer, "connected the dots" between his ADHD, ADHD-related mental limitations, and resultant need for accommodation). Steward was not required to speculate as to the extent of King's disability, particularly when King never attempted to establish,

18

via any medical documentation or other means, that her asthma qualified as a disability.  *Id.*  Neither Bungard's general awareness of King's illness nor his knowledge that King was periodically absent because of her asthma are enough to show that Bungard—and therefore, Steward—knew that King had a disability.  *See Messenheimer v. Coastal Pet Prods., Inc.*, 764 Fed. App'x 517, 519 (6th Cir. 2019) (citing *Nilles v. Givaudan Flavors Corp.,* 521 F. App'x 364, 366, 369 (6th Cir. 2013), *Tennial v. United Parcel Service*, 840 F.3d 292, 306 (6th Cir. 2016)).

### 4.      Whether King Requested an Accommodation

Steward argues that King's claim also fails because King failed to request an accommodation. (Doc. No. 49, PageID# 1357.)  Steward argues that King never disclosed to anyone that she requested a leave of absence due to her disability and that the simple act of requesting FMLA leave was insufficient to qualify as a request to accommodate a disability.  (*Id.*)

In her Opposition, King implies that Steward should have known that King needed a reasonable accommodation for her asthma because when she called to report her absences between April 28, 2017 and June 2, 2017, King explained that she was out sick because her asthma had flared up so badly that she was unable to work, and also because King previously needed time off due to other severe asthma flare-ups.  (Doc. No. 56, PageID# 1838.)  King further argues that Steward's position that King "apply for her reasonable accommodation leave through FMLASource is . . . not supported by the law or the facts" and that she was not obligated to use a "magic process" to obtain a leave of absence.  (*Id.*)  King argues that she was not applying for any of the leaves of absence described in her collective bargaining agreement and administered by FMLASource and the ADA does not require her to do so.  (*Id.*)  Rather, King asserts that she initially "look[ed] at her asthma flare-up situation that began on April 28, 2017 on a day-to-day basis, and not necessarily as a long-

19

term leave situation." (*Id.*)  King further contends that she did not attempt to provide Steward with any medical documentation regarding her asthma because the hospital had a "well-known policy . . . not to accept any doctor's notes or medical certification information except through FMLASource." (*Id.* at PageID# 1839.)

The employee bears the initial burden of requesting an accommodation. *Gantt*, 143 F.3d at 1046-47; *see also Tubbs v. Formica Corp.*, 107 F. App'x 485, 488 (6th Cir. 2004) ("'A disabled employee who claims that he or she is otherwise qualified with a reasonable accommodation 'bears the initial burden of proposing an accommodation and showing that that accommodation is objectively reasonable.''") (internal citations omitted). The Sixth Circuit has "generally given plaintiffs some flexibility in how they request an accommodation." *Mobley v. Miami Valley Hosp.*, 603 F. App'x 405, 413 (6th Cir. 2015) (citing *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1108 (6th Cir. 2008)). Still, the initial burden falls on the employee to request an accommodation because "[t]he employer is not required to speculate as to the extent of the employee's disability or the employee's need or desire for an accommodation." *Gantt*, 143 F.3d at 1046-47. There is no "bright-line" test for determining when an employee has made a reasonable accommodation request, but at a minimum, the employee "must 'make it clear from the context that [the request] is being made in order to conform with existing medical restrictions.'" *Tennial v. United Parcel Service*, 840 F.3d 292, 307 (6th Cir. 2016) (internal citations omitted). If the employee fails to "identify and request" a reasonable accommodation, "the employee's claim must be dismissed." *Johnson v. Cleveland City School Dist.*, 443 F. App'x 974, 983 (6th Cir. 2011) (citing *Tubbs*, 107 F. App'x at 488-89).

The Court finds that King failed to request an accommodation for leave. As an initial matter, King fails to identify when or how she requested an accommodation of leave from Steward. In her Opposition, King does not explicitly identify her May 19, 2017 call to FMLASource as her request for accommodation. King also does not explicitly identify her daily absence reporting calls to be her request for accommodation. Rather, King's argument that she requested a reasonable accommodation boils down to her implication that Steward should have known that King needed an accommodation for her asthma. This is insufficient as a matter of law. Steward was not obligated to speculate as to the extent of King's need for an accommodation. *See Gantt*, 143 F.3d at 1046-47.

While King need not "use magic words like 'accommodation' or 'disability' in requesting an accommodation," she still had an obligation to make clear to Steward that she desired assistance with her disability. *Hudson v. First Solar, Inc.*, No. 3:12-cv-2292, 2014 WL 12600136, at *6 (N.D. Ohio Mar. 28, 2014). In *Hudson*, the plaintiff suffered from undiagnosed gastroparesis, which caused him frequent gastrointestinal distress. *Id.* at *1. The plaintiff was disciplined several times for excessive absenteeism, tardiness, and call-offs, which the plaintiff maintained stemmed from his medical issues. *Id.* At one point, the plaintiff spoke with a human resources officer to ask if leave was a possibility so that the plaintiff could recover and avoid additional disciplinary action. *Id.* However, the defendant subsequently terminated the plaintiff's employment for excessive absenteeism. *Id.* at *2. The plaintiff alleged that his employer failed to accommodate his disability. *Id.* However, the court concluded that the plaintiff failed to establish his *prima facie* case because, among other reasons, the plaintiff failed to demonstrate that he requested an accommodation from his employer. *Id.* at *6. The plaintiff "acknowledged in his deposition that he never requested an accommodation." *Id.* The court rejected the plaintiff's contention that asking human resources if leave was "a possibility" was a

21

request for an accommodation of leave. *Id.* The court concluded that the plaintiff was "correct in stating he does not have to use magic words like "accommodation" or "disability" in requesting an accommodation," but that this did not "relieve him of his obligation to obtain a diagnosis or present manifest signs of disability—neither of which he did here." *Id.*

Here, King offers no evidence that she presented signs of her disability to Steward. While King told both Burns and Bungard in late May 2017 that she planned to seek medical leave because of her asthma, she did not tell either of them (or anyone else at Steward) that her asthma was so debilitating that she required an accommodation for her disability. (Doc. No. 44, PageID# 258.) She also did not complete Steward's disability accommodation form. (*Id.*) She also did not obtain medical documentation certifying her medical need for leave until June 6, 2017. (*Id.* at PageID# 655, Ex. 15.) Steward is not required to "speculate as to the extent" of Plaintiff's disability or her desire for an accommodation. *Gantt*, 143 F.3d at 1046-47. While "there is no bright-line test for determining when an employee like [Plaintiff] has made such a request, 'at a minimum [s]he must make it clear from the context that [the request] is being made in order to conform with existing medical restrictions.'" *Tennial*, 840 F.3d at 307.

Moreover, King admits in her own Opposition that she approached her April 28, 2017 asthma flare-up "on a day-to-day basis, and not necessarily as a long-term leave situation." (Doc. No. 56, PageID# 1838.) Instead of seeking medical leave at the beginning of her flare-up, King reported her absences per Steward's call-off policies each day she was sick. (*Id.*) King did not even attempt to obtain medical leave until May 19, 2017—21 days after she left work due to illness—when she called FMLASource to inquire about FMLA leave. (Doc. No. 45, PageID# 711-12.) By her own words, King contends that she waited on a day-to-day basis to see if she would recover from her asthma

flare-up *because she did not believe*, at the outset of her flare-up on April 28, 2017, *that she needed medical leave*, let alone a reasonable accommodation for a *disability*.  (Doc. No. 56, PageID# 1838.) It would have been impossible for Steward to extrapolate, based on King's daily calls reporting her absence, that King was requesting a reasonable accommodation for a disability, in the form of a leave of absence when King herself did not believe that she needed such a leave until 21 days later.  Steward is not "required to speculate as to the extent of the employee's . . . need or desire for an accommodation."  *Dunn v. GOJO Inds.*, 96 N.E.3d 870, 878 (Ohio 9th Dist. Ct. App. 2017).

King's argument that Steward's "position that King had to apply for her reasonable accommodation leave through FMLASource is also not supported by the law or the facts" misstates Steward's position.  (Doc. No. 56, PageID# 1838.)  King misapprehends the difference between requesting a medical leave with requesting a reasonable accommodation for a disability.  King's implication that it would have been futile to submit any medical documentation to Steward because Steward had a "well-known policy "not to accept any doctor's notes or medical certification information except through FMLASource" further demonstrates that King conflates requesting medical leave with requesting a reasonable accommodation.  (*Id.* at PageID# 1839.)  Certainly, a temporary leave of absence *can* be a reasonable accommodation for a disability.  *See, e.g., Cehrs v. Northeast Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 778 (6th Cir. 1998) ("Medical leave as an accommodation is not a novel concept.").  However, a reasonable accommodation for a disability is not the same as a medical leave of absence.  If King wished to request a reasonable accommodation for her disability, King was obligated to notify Steward of her disability and request a reasonable accommodation.  *Dunn*, 96 N.E.3d at 878.  King offers no evidence that she affirmatively requested

such an accommodation, or that Steward refuses to accept medical documents with respect to disabled employees' requests for reasonable accommodations.[4]

Accordingly, the Court concludes that King fails to establish that she requested a reasonable accommodation of Steward.

### 5.        Whether King Requested a Reasonable Accommodation

Steward argues that, even if this Court concluded that King requested an accommodation from Steward, King nevertheless fails to establish her *prima facie* case because King's requested accommodation was not reasonable.  (Doc. No. 49, PageID# 1358.)  Steward argues that King's request was not reasonable because it was not timely made, not supported by medical evidence, and was not limited to a specific timeframe.  (*Id*.)  King argues that her proposed accommodation of leave was reasonable because the "benefits exceeded the costs" for Steward, since Steward would have retained a highly experienced nurse.  (Doc. No. 56, PageID# 1839-40.)  King further argues that there is no presumption that uninterrupted attendance is an essential job requirement and therefore leaves of absence are not barred as reasonable accommodations.  (*Id.*)

The plaintiff "bears the initial burden of establishing that the accommodation he or she seeks is reasonable."  *Walsh v. United Parcel Serv.*, 201 F.3d 718, 725 (6th Cir. 2000) (citing *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1187 (6th Cir. 1996), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312 (6th Cir.2012)).  "A suggested accommodation is

---

[4] King also contends that "FMLASource refused to accept any medical restriction or certification information from King during the month of May while she was still employed."  (Doc. No. 56, PageID# 1839.)  On Reply, Steward argues that King did not obtain *any* medical documentation opining whether King had a medical need for a leave of absence from April 28, 2017 through June 2, 2017.  (Doc. No. 57, PageID# 1854.)  Steward's argument is well-taken.  King did not obtain such a medical certification until June 6, 2017.  (Doc. No. 44, PageID# 655, Ex. 15.)  Therefore, there would have been no medical information for FMLASource to refuse to accept in May.  King's assertion that FMLASource refused to accept King's medical documentation in May is without merit.

not reasonable if it requires eliminating an 'essential' function of the job." *Price v. Carter Lumber Co.*, No. 27289, 2015 WL 1850896, at *3 (Ohio 9th Dist. Ct. App. Apr. 22, 2015) (citing *Rorrer v. City of Stow*, 743 F.3d 1025, 1039 (6th Cir. 2014)).

Open-ended, indefinite requests for leave "are not requests for reasonable accommodation." *Allen v. BellSouth Telecomm., Inc.*, 483 Fed. Appx. 197, 201 (6th Cir. 2012) (citing *Monette*, 90 F.3d at 1187). In *Allen*, the plaintiff suffered from severe depression. *Id.* at 198. The plaintiff attempted to take short-term disability leave to address her illness, but her employer required her to return to work. *Id.* Rather than return, the plaintiff retired and brought suit against her employer for failing to accommodate her disability, among other things. *Id.* at 199. The plaintiff "insist[ed] that she did request an accommodation by seeking paid leave under AT&T's Short-Term Disability plan," but also admitted that she "did not specify how much time she wanted off" during her deposition. *Id.* at 201. The plaintiff admitted that she didn't know how much time she needed off at the point that she requested her leave because she "had an illness." *Id.* The Sixth Circuit concluded that "[s]uch open-ended, indefinite requests for leave are not requests for reasonable accommodation" and affirmed the district court's granting of summary judgment in the employer's favor. *Id.*

Likewise, the Court concludes that King's requested accommodation for leave was unreasonable because it was functionally a request for indefinite leave. In her Opposition, King contends that she "treated her time off for asthma that began on April 28, 2017 on a day-by-day basis, not knowing whether it was a short-lived minor flare-up issue that might be handled relatively swiftly." (Doc. No. 56, PageID# 1831.) Like in *Allen*, King did not know how long it would take her to recover. (*Id.* at PageID# 1838.) King only attempted to obtain leave after she had been absent for 21 days. (Doc. No. 45, PageID# 711-12.) Even when King spoke with FMLASource on May 19,

2017, she did not provide FMLASource with any indication as to how long she expected to remain away from work.  (*Id.* at PageID# 712-13.)  King also never communicated to Steward how long of a leave she needed.  (*Id.*)  King only obtained medical documentation certifying her need for medical leave on June 6, 2017, four days after her termination.  (Doc. No. 44, PageID# 289-90, 656-57.)  This kind of open-ended, indefinite request for leave is not a reasonable request for accommodation.  *See Allen*, 483 Fed. Appx. at 201.

Further, Steward's argument on Reply that this case is distinguishable from *Cehrs v. Northeast Ohio Alzheimer's Research Ctr.* is well-taken.  (Doc. No. 57, PageID# 1855.)  The Court agrees with Steward that King's reliance on *Cehrs* is misplaced.  In *Cehrs*, the plaintiff, who worked as a nurse, suffered a severe flare-up of psoriasis.  *Cehrs v. Northeast Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 778 (6th Cir. 1998).  Her doctor wrote a note to the defendant-employer explaining that the plaintiff should be excused from work for eight weeks.  *Id.*  At the end of eight weeks, the plaintiff had not recovered.  *Id.*  The plaintiff's doctor submitted another note to the defendant, explaining that the plaintiff should be excused for an additional month.  *Id.*  At the end of that month, the plaintiff's doctor provided the defendant with another note indicating that the plaintiff had recovered enough to return to work on a part-time basis and also that the doctor anticipated the plaintiff would be able to return to full-time work the following month.  *Id.*  However, the defendant denied the plaintiff's request to return part-time and terminated the plaintiff's employment.  *Id.*  The Sixth Circuit concluded that a genuine issue of material fact existed as to whether granting the plaintiff's request would have unduly burdened the defendant or constituted a reasonable accommodation for the plaintiff because the defendant had granted similar medical leaves to other employees in similar circumstances.  *Id.* at 783.

26

*Cehrs* is clearly distinguishable from the instant case.  In *Cehrs*, the plaintiff obtained a medical certification at the *outset* of her leave that specified how long of a leave the plaintiff anticipated taking and explained why such a leave was medically necessary.  *Id.* at 778.  As discussed *supra*, King did not specify how long her leave would last or obtain any medical documentation that certified how long she would be unable to work.  Additionally, the Court is not persuaded by King's argument that, according to *Cehrs*, medical leave is not barred as an accommodation because uninterrupted attendance cannot be presumed to be an essential job requirement.  (Doc. No. 56, PageID# 1840.)  Steward does not argue that King was *barred* from seeking medical leave.  Rather, Steward argues—and the Court agrees—that King was obligated to request a reasonable accommodation from Steward and, as discussed *supra*, indefinite leave is not a reasonable accommodation.

The Court concludes that King cannot demonstrate that her proposed accommodation is objectively reasonable.  Accordingly, King fails to establish her *prima facie* case that Steward failed to accommodate King's disability.  Therefore, the Court need not address whether King's proposed accommodation posed an undue hardship on Steward.  *See Barber*, 63 N.E.3d at 626 (if plaintiff establishes *prima facie* case of failure to accommodate, burden shifts to defendant to demonstrate that the proposed accommodation would pose an undue hardship on it).

**IV.     Conclusion**

Accordingly, for the reasons set forth above, Defendant's Motion for Summary Judgment (Doc. No. 49) is GRANTED.

**IT IS SO ORDERED.**


               *s/Pamela A. Barker*

               PAMELA A. BARKER

Date:  April 22, 2021           U. S. DISTRICT JUDGE